# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2380-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

T.J.W.,

    Defendant-Appellant.

_____

Submitted February 12, 2020 – Decided March 17, 2020

Before Judges Koblitz, Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 13-08-0798.

Joseph E. Krakora, Public Defender, attorney for appellant (Al Glimis, Designated Counsel, on the briefs).

Charles A. Fiore, Gloucester County Prosecutor, attorney for respondent (Michelle Resha Jeneby, Senior Assistant Prosecutor, on the brief).

PER CURIAM

Defendant T.J.W.[1] appeals from his August 9, 2017 judgment of conviction after pleading guilty to a second-degree sexual assault of a seven-year-old girl, N.J.S.A. 2C:14-2(b). He was sentenced to seven years in state prison. Defendant argues that we should vacate his conviction and remand the matter for further proceedings because the trial court abused its discretion in denying: 1) his request for an adjournment to proceed with his choice of counsel; 2) his requests for recusal and a change of venue; 3) his motion to obtain the addresses of the State's child witnesses; and 4) his pre-sentencing motion to withdraw his guilty plea. Defendant argues in the alternative that we should remand for resentencing because the court failed to find one mitigating factor and failed to provide a statement of reasons when imposing a $1000 Sex Crime Victim Treatment Fund (SCVTF) penalty. We affirm, remanding only for reconsideration of the SCVTF penalty.

In August 2013, defendant was indicted for first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); second-degree sexual assault; and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), occurring in October 2012.

---

[1] We refer to defendant by initials because he, too, is the victim of a sexual assault. R. 1:38-3(c)(12).

On September 24, 2015, defendant filed a civil complaint in the United States District Court for the District of New Jersey alleging that on April 2, 2015, he was sexually assaulted by a corrections officer while incarcerated pending trial. The corrections officer was ultimately convicted of sexual assault, N.J.S.A. 2C:14-2(c), and official misconduct, N.J.S.A. 2C:30-2(a). In May 2017 the officer was sentenced to a five-year aggregate term of incarceration with a two-year period of parole ineligibility.

A year earlier, on May 19, 2016, defendant's fourth criminal attorney filed a pretrial notice of substitution of attorney, which included certifications from both defendant and the withdrawing attorney. Despite this substitution of attorney, the third attorney represented defendant on the first day of trial five days later, May 24, 2016. The third attorney asked for a two-week postponement so that defendant could be represented by the fourth attorney at trial.

The judge stated that she met with the fourth attorney and assistant prosecutor in chambers the week before. The fourth attorney advised the judge that he would be unavailable for the start of trial because he had a meeting with another prosecutor on a different case. She further stated that the fourth attorney was "not aware of the discovery in this matter, had not seen the videos or the

information regarding the [m]otions, was not aware of the [m]otions . . . and was not prepared to be here in order to be able to proceed."

The judge stated: "This matter has been on the trial list for quite some time. This last minute effort on the part of the [d]efendant to substitute a new attorney, who is not only unprepared but unavailable, is not acceptable and the [c]ourt is going to proceed with jury selection today." The judge noted, however, that the fourth attorney is "welcome to appear" when the opening statements were scheduled, on June 7, 2016, two weeks from the date of jury selection.

Defendant stated to the court that he retained the fourth attorney because the third attorney told defendant that he did not plan on calling either of defendant's witnesses. Defendant asserted that he and the fourth attorney had contacted those witnesses and made plans for them to come to court.

In response, the third attorney informed the court that he could not call these witnesses because defendant would not turn over their names to counsel if defense counsel was going to give the names to the State. The court then told defendant that the disclosure of the names of potential witnesses was required prior to jury selection because the court must screen jurors and the State is entitled to discovery.

4

Defendant asked the judge to postpone the trial until July 1, 2016, so that defendant could speak with his witnesses. The court denied this request and advised defendant that he had two weeks to prepare before the start of testimony on June 7, 2016.

In addition to the request for an adjournment, defendant also unsuccessfully requested the judge to recuse herself from his trial and for a change of venue. Defendant asserted that because he made an unsuccessful request to move to another jail, and then was sexually assaulted by a corrections officer, the judge and the prosecutor may be called as witnesses in his civil case.

At this point in the hearing, defendant stated to the court that if the fourth attorney "has an opportunity to discuss a plea bargain with [the prosecutor]," he did not believe he was "going to be safe in a New Jersey State Prison." He also said that "one of the only things stopping [him] from taking a plea deal is not just the fact that the [c]ourt is trying to force [him] to go to trial without being properly prepared, but [he] do[es] [not] want to risk [his] life going to a New Jersey Prison."

The third attorney then informed the court that he spoke with the fourth attorney who "indicated that there [was] some . . . potential of a plea occurring." The third attorney stated that defendant "wanted to wait until tomorrow, until

[the fourth attorney] could be here . . . [t]o try to negotiate a plea." He further stated that he was concerned that defendant was "not authorizing [him] to enter into plea negotiations and [defendant] wants to wait for [the fourth attorney]." The court responded:

> [The fourth attorney] informed me not that he had court today but that he had to meet with a Mr.[] from the Prosecutor's Office. I believe it . . . [was] in reference to going over discovery in another case. That doesn't take priority over a trial so I certainly was not . . . going to postpone a trial matter for the purposes of facilitating the logical, what he thought to be, the logical flow of his casework. If [the fourth attorney] is here tomorrow and/or if you would like for me to give an opportunity for you, [the third attorney] and [the prosecutor], to talk about this case and for you to then discuss it with [defendant], perhaps, if he feels comfortable talking with you regarding it, or with [the fourth attorney], then I will allow that.

Shortly thereafter, a recess was taken to give the parties an opportunity to negotiate a plea agreement. After about a six-hour recess, defendant entered into a plea agreement.

During his factual basis, defendant admitted that he was in a relationship with the victim's mother, D.R.,[2] who was living at a hotel. On October 16, 2012,

---

[2] We use initials when referring to the child victim pursuant to N.J.S.A. 2A:82-46, as well as her mother and her brother to preserve the privacy of the victim. R. 1:38-3(c)(9).

the day of the incident, defendant was at the hotel with D.R. and her daughter and son. D.R. left the hotel during the day, leaving defendant to babysit the two children. When asked to explain the incident in his own words, defendant stated that he "touched [the victim] in her vaginal area" outside of her clothing with his hand "to sexually gratify [himself]." At the time of the incident, defendant was twenty-seven years old and the victim was under thirteen years old. The judge accepted the guilty plea, finding that defendant "made a knowing, intentional, voluntary waiver of his rights and has voluntarily entered into this plea."

On March 3, 2017, before sentencing, defendant's fifth attorney filed unsuccessful motions to vacate his guilty plea and compel the State to disclose the addresses of the witnesses. In her written decision, the judge analyzed each of the four Slater factors: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." State v. Slater, 198 N.J. 145, 157–58 (2009).

Regarding factor one, the court determined that defendant did not assert a colorable claim of innocence, stating that "[n]either at the time of the guilty

plea . . . nor at the time of the argument of this motion to withdraw his plea, did the defense ever submit specific, credible facts, nor point to facts in the record to buttress their claim." See id. at 158. The judge noted that defendant "failed to submit affidavits or certifications from . . . witnesses that would substantiate his claim." The court also rejected defendant's argument that he "only plead out of fear," citing to a colloquy between defendant and the court during his plea.

Regarding factor two, the court concluded that defendant "failed to demonstrate a strong substantiated reason to withdraw his plea." The court found that defense counsel had not shown that "defendant was misinformed about a material element of the plea negotiation." Quoting Slater, she found defendant had also not presented "a plausible showing of a valid defense and credibly demonstrated why the defense was 'forgotten or missed' at the time of the plea." See id. at 160. Furthermore, the court rejected defendant's argument that he was unable to have his attorney of choice. Not only did defendant hire the fourth attorney "on the eve of trial in a matter that had been on the trial list for almost [seven] months," but the court also welcomed the fourth attorney to appear by not starting opening statements until two weeks after jury selection. The court stated that the fourth attorney's "failure to appear is evidence of his unwillingness to do so."

A-2380-17T4

Regarding factor three, the court rejected defendant's argument that he took the plea out of fear. In support of this finding, the court compared the initial charges and potential sentence with the negotiated plea. The court pointed out that defendant was given a lengthy recess to discuss the negotiated plea.

Regarding factor four, the court determined that withdrawal of the plea would result in an unfair advantage to defendant. Quoting Slater, the court stated that "the critical inquiry is 'whether the passage of time has hampered the State's ability to present important evidence.'" Id. at 161. At the time of the incident, the victim was seven years old and told her nine-year-old brother what had happened. They were homeless. The mother, defendant's former girlfriend, has since died. The children were in a Division of Child Protection and Permanency (DCPP) placement following the loss of their mother. The court stated: "To vacate the plea would be unfair to the victim and her brother, who have moved on with their young lives." The judge denied the motion "based on the totality of the circumstances."

Defendant was sentenced to seven years in state prison, with eighty-five percent parole ineligibility pursuant to N.J.S.A. 2C:43-7.2, as well as parole supervision for life pursuant to N.J.S.A. 2C:43-6.4. The court imposed mandatory penalties and an SCVTF penalty of $1000.

Defendant raises the following issues on appeal:

POINT I: THE COURT BELOW ABUSED ITS DISCRETION IN DENYING [DEFENDANT'S] APPLICATION FOR A SHORT ADJOURNMENT TO PROCEED WITH THE COUNSEL OF HIS CHOICE.

POINT II: SINCE JUDGE [] WAS POTENTIALLY A FACT WITNESS IN [DEFENDANT'S] PENDING FEDERAL LAWSUIT IN WHICH GLOUCESTER COUNTY WAS A NAMED DEFENDANT, SHE ERRED IN DENYING [DEFENDANT'S] REQUESTS THAT SHE RECUSE HERSELF AND FOR A CHANGE OF VENUE.

A. JUDGE [] ABUSED HER DISCRETION WHEN SHE REFUSED TO DISQUALIFY HERSELF FROM SITTING ON THIS CASE.

B. JUDGE [] ABUSED HER DISCRETION WHEN SHE DENIED [DEFENDANT'S] MOTION FOR A CHANGE OF VENUE.

POINT III: DEFENDANT'S RIGHTS TO PRESENT A COMPLETE DEFENSE, TO DUE PROCESS, AND TO A FAIR TRIAL WERE VIOLATED WHEN THE TRIAL COURT DENIED HIS MOTION TO OBTAIN THE ADDRESSES OF THE STATE'S MAIN WITNESSES.

POINT IV: THE TRIAL COURT ERRED IN DENYING DEFENDANT'S PRE-SENTENCING MOTION TO WITHDRAW FROM HIS GUILTY PLEA.

POINT V: ALTERNATIVELY, THIS CASE SHOULD BE REMANDED FOR RESENTENCING BECAUSE THE SENTENCING COURT FAILED TO FIND

MITIGATING FACTORS CLEARLY PRESENT IN THE RECORD, AND FAILED TO MAKE THE FACTUAL FINDINGS REQUIRED WHEN IMPOSING A[N SCVTF] PENALTY.

We affirm substantially for the reasons stated in the trial judge's thoughtful written opinion. We add the following.

## I. Denial of Adjournment for New Counsel.

"[A] trial court's decision to deny a request for an adjournment to permit a defendant to retain counsel of his [or her] choice will not be deemed reversible error absent a showing of an abuse of discretion which caused defendant a 'manifest wrong or injury.'" State v. Hayes, 205 N.J. 522, 537 (2011) (quoting State v. McLaughlin, 310 N.J. Super. 242, 259 (App. Div. 1998)).

When a defendant requests an adjournment in order to substitute counsel, "the trial court must strike a balance between its inherent and necessary right to control its own calendar and the public's interest in the orderly administration of justice, on the one hand, and the defendant's constitutional right to obtain counsel of his own choice, on the other." Id. at 538 (quoting State v. Furguson, 198 N.J. Super. 395, 402 (App. Div. 1985)).

Although defendant's first two attorneys may have withdrawn due to their own conflicts, it was within the trial judge's discretion not to allow an unprepared fourth attorney to substitute in on the eve of the trial of a man

charged with assaulting a child in October 2012, more than three and one-half years before the trial date. Defendant also represented that he was exploring a guilty plea with the fourth attorney, so his guilty plea was not the result of not being afforded the adjournment.

## II. Denial of Recusal and Change of Venue.

A motion for disqualification or recusal is "entrusted to the sound discretion of the judge" and the decision is "subject to review for abuse of discretion." State v. McCabe, 201 N.J. 34, 45 (2010). Rule 3.17(B) of the Code of Judicial Conduct states that "[j]udges shall disqualify themselves in proceedings in which their impartiality or the appearance of their impartiality might reasonably be questioned." The Code includes the following instances: personal bias, prejudice, or knowledge; financial interest; personal relationships; prior professional relationships; post-retirement employment; or a "continuing social relationship" that "would give rise to partiality or the appearance of partiality." Ibid. The judge was not a witness to any behavior that was the subject of defendant's lawsuit. She did not abuse her discretion by continuing to preside over the matter.

We review a trial court's decision on a motion to change venue under an abuse of discretion standard. State v. Nelson, 173 N.J. 417, 476–77 (2002).

12

Rule 3:14-2 provides that a motion for change of venue "shall be granted if the court finds that a fair and impartial trial cannot otherwise be had." Defendant did not sue the local prosecutor's office. It was not an abuse of discretion to deny a change of venue.

### III. Addresses of Young Children.

We "defer to the trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Capital Health System, Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79–80 (2017).

Defendant relies on Rule 3:13-3(b)(1)(F), which requires the disclosure of the "names, addresses, and birthdates of any persons whom the prosecutor knows to have relevant evidence or information including a designation by the prosecutor as to which of those persons may be called as witnesses." When denying defendant's request for the addresses[3] of the two child witnesses for interview purposes, the judge stated:

> [A] request for the addresses of those children that at one point had been placed by DCPP as a result of one victim being sexually assaulted by [defendant] and the other being her brother that she reported it to at age seven for her and age nine for him. . . . Their mother has since unfortunately passed away or expired and the

---

[3] We were not informed whether the children were placed in the same home.

request for that information is denied. . . . Their addresses are protected.

The court further stated that "[d]efendant has received full copies of not only the transcript of their statements, but the video statements themselves, as well as the summary from the police interviews." No defense request was made to interview the children at another location or for a defense expert such as a child psychologist to interview the children. The court acted within its discretion in denying defendant's request for discovery of the young witnesses' addresses.

## IV.  Slater Issue.

The trial court has broad discretion in deciding a motion to withdraw a guilty plea. State v. Bellamy, 178 N.J. 127, 135 (2003). The timing of a motion to withdraw a guilty plea triggers different standards of proof. Slater, 198 N.J. at 160. "[E]fforts to withdraw a plea after sentencing must be substantiated by strong, compelling reasons," while "a lesser showing is required for motions raised before sentencing." Ibid.

In deciding defendant's motion to withdraw his guilty plea prior to sentencing, the trial judge analyzed each of the four factors established by Slater, 198 N.J. at 157–58. Defendant argues that he could not provide exculpating certifications from the children because he did not have their addresses. His

14

argument is speculative. Given their young age, the passage of time and the fact that the children's mother was deceased, the judge did not abuse her discretion in denying defendant's motion to withdraw his guilty plea.

## V. Sentencing.

In reviewing a trial judge's sentencing decision, we (1) "require that an exercise of discretion be based upon findings of fact that are grounded in competent, reasonably credible evidence"; (2) "require that the factfinder apply correct legal principles in exercising its discretion"; and (3) "exercise that reserve of judicial power to modify sentences when the application of the facts to the law is such a clear error of judgment that it shocks the judicial conscience." State v. Roth, 95 N.J. 334, 363–64 (1984).

Defendant argues that the court should have found mitigating factor eleven, that imprisonment would cause serious hardship, N.J.S.A. 2C:44-1(b)(11). In support of this argument, defendant cites to the Adult Diagnostic and Treatment Center report[4] indicating that he suffers from post-traumatic stress disorder as a result of his history of childhood sexual abuse. He asserts that he was further traumatized when he was sexually assaulted by a corrections

---

[4] Defendant's conduct was found not to be "characterized by a pattern of repetitive, compulsive behavior." N.J.S.A. 2C:47-3(a).

officer and "subjected to a pattern of harassment and violence" while incarcerated.

In determining defendant's sentence, the judge found aggravating factor three, "[t]he risk that the defendant will commit another offense"; factor six, "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted"; and factor nine, "[t]he need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1(a)(3), (6), (9). She did not find any mitigating factors. The judge stated:

> I do find that [defendant] does not accept personal responsibilities and his shortcomings have been blamed on others. . . . There's a strong presumption of incarceration that's applicable for a second-degree crime, it has not been overcome by any factors.
>
> Aggravating [f]actors substantially outweigh any [m]itigating [f]actors and unless there's a substantial change in attitude, there's a high likelihood of reoffending.

The judge rejected mitigating factor eleven, which was not "a clear error in judgment." Many defendants have psychiatric difficulties. The sentence does not "shock the judicial conscience." Roth, 95 N.J. 364–65.

In State v. Bolvito, 217 N.J. 221, 224 (2014), our Supreme Court stated:

> In setting an SCVTF penalty, the sentencing court should consider the nature of the offense, as well as the defendant's ability to pay the penalty during any

16

> custodial sentence imposed and after his or her release. We further hold that the sentencing court should provide a statement of reasons as to the amount of any penalty imposed pursuant to N.J.S.A. 2C:14-10(a).

Because the judge did not provide a statement of reasons, we remand for reconsideration of the SCVTF penalty, especially in light of defendant's incarceration.

Affirmed in part and reversed and remanded for further proceedings regarding the SCVTF penalty only. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION